RUSSELL M. SELMONT (SBN 252522)
  rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

CARL OPPEDAHL (*Pro Hac Vice* - CO SBN. 27859)
  carl2@oppedahl.com
AILEEN LAW (*Pro Hac Vice* – CO SBN 33043)
  alaw@oppedahl.com
MICAH GUNN (*Pro Hac Vice* – CO SBN 47934)
  mgunn2@oppedahl.com
**OPPEDAHL PATENT LAW FIRM LLC**
P O Box 669
Broomfield, Colorado  80038-0669
Telephone  (303) 252-8800

Attorneys for Plaintiff WEBMAGIC VENTURES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WEBMAGIC VENTURES, LLC, a California limited liaiblity company,<br><br>Plaintiff,<br><br>v.<br><br>DEUX RON, INC., a Tennessee corporation; RON HENSLEY, an individual; and ERIC HENSLEY, an individual,<br><br>Defendants. | Case No. 2:18-cv-5933-PA-AS<br><br>*Hon. Percy Anderson – Crtrm. 9A*<br><br>**PLAINTIFF WEBMAGIC VENTURES, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(B)(2), 12(B)(3), OR IN THE ALTERNATIVE, TO TRANSFER VENUE UNDER 28 U.S.C. §§ 1404, 1406, 1631**<br><br>Date:       August 27, 2018<br>Time:       1:30 p.m.<br>Place:      Courtroom 9A |

14038.16:9315580.1

Case No. 2:18-cv-5933-PA-AS

PLAINTIFF WEBMAGIC VENTURES, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULES 12(B)(2), 12(B)(3), OR IN THE ALTERNATIVE, TO TRANSFER VENUE

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | JURISDICTION OVER DEFENDANTS RON AND ERIC HENSLEY IS COMMENSURATE WITH JURISDICTION OVER DEFENDANT DEUX RON, INC. | 1 |
| II. | THIS COURT HAS SPECIFIC JURISDICTION OVER DEFENDANTS | 3 |
| | A. Defendants Purposefully Directed Activity into California and Purposefully Availed Themselves of the Laws of California. | 4 |
| |    1. Defendants Have Purposefully Availed Themselves of California's Benefits and Protections | 4 |
| |    2. Defendants Have Purposefully Directed Activities Towards California | 8 |
| | B. Plaintiff's Cause of Action Arises Out of Defendants' Operation of its Infringing Interactive Website and Sales | 11 |
| III. | IF THE COURT FINDS INSUFFICIENT INFORMATION TO ESTABLISH JURISDICTION, IT SHOULD PERMIT JURISDICTIONAL DISCOVERY | 12 |
| IV. | VENUE IN THIS FORUM IS PROPER | 13 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Allstar Marketing Group, LLC v. Your Store Online, LLC*, (C.D. Cal. 2009)
666 F. Supp. 2d 1109..................................................................2, 5, 11

*Am. West Airlines, Inc. v. GPA Group, Ltd.*, (9th Cir. 1989)
877 F.2d 793..............................................................................................12

*American Auto Ass'n, Inc. v. Darba Enterprises, Inc.* (N.D. Cal. 2009),
2009 WL 1066506.......................................................................................4

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, (9th Cir. 2017)
874 F.3d 1064.............................................................................................9

*Burger King Corp. v. Rudzewicz*, (1985)
471 U.S. 462......................................................................................4, 5, 6

*Cybersell, Inc. v. Cybersell, Inc.* (9th Cir. 1997)
130 F.3d 414...............................................................................................7

*Davis v. Metro Prods., Inc.*, (9th Cir. 1989)
885 F.2d 515...............................................................................................2

*Doe v. Unocal*, (9th Cir. 2001)
248 F.3d 915...............................................................................................7

*Dole Food Co., Inc., v. Watts*, (9th Cir. 2002)
303 F.3d 1104.............................................................................................3

*Greenbroz, Inc. v. Laeger Built, LLC* (S.D. Cal. 2017)
2017 WL 1427139.....................................................................................11

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, (9th Cir. 2003)
328 F.3d 1122...........................................................................................12

*Inventors Row Inc. v. Blankenship* (E.D. Cal. 2018)
2018 WL 2064795.......................................................................................9

*j2 Cloud Services, Inc. v. Fax87* (C.D. Cal. 2017)
2017 WL 1535083.................................................................................8, 11

*Mitan v. Freeney,* (C.D. Cal. 2007)
497 F. Supp. 2d 1113................................................................................12

*Orchid Biosciences, Inc. v. St. Louis Univ.*, (S.D. Cal. 2001)
198 F.R.D. 670.........................................................................................12

*Panavision Int'l, L.P. v. Toeppen*, (9th Cir. 1998)
141 F.3d 1316.............................................................................................3

ERVIN COHEN & JESSUP LLP

*Pebble Beach Co. v. Caddy*, (9th Cir. 2006)
  453 F.3d 1151 .................................................................................. 4, 7, 9

*PetEdge, Inc. v. Fortress Secure Sols., LLC* (D. Mass. 2015)
  F. Sup. 3d 249 ...................................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.*, (9th Cir. 2004)
  374 F.3d 797 ........................................................................................... 4

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, (9th Cir. 2012)
  704 F.3d 668 ........................................................................................ 3, 9

*Wolf Designs, Inc. v. DHR Company*, (C.D. Cal. 2004)
  322 F. Supp. 2d 1065 .............................................................................. 2

**STATE CASES**

*Doe v. Roman Catholic Archbishop of Los Angeles* (2016)
  247 Cal. App.4th 953 ............................................................................. 1

**STATUTES**

California Civil Code § 410.10 .................................................................... 3

California Civil Code §§ 1749.45, et seq. ..................................................... 8

Plaintiff WebMagic Ventures, LLC. ("Plaintiff") respectfully submits its Opposition to Defendants' Motion to Dismiss (the "Motion to Dismiss" or "Motion") filed by Defendants Deux Ron, Inc., Ron Hensley, and Eric Hensley (collectively, "Defendants", individually, "Ron" and "Eric").

# I. JURISDICTION OVER DEFENDANTS RON AND ERIC HENSLEY IS COMMENSURATE WITH JURISDICTION OVER DEFENDANT DEUX RON, INC.

Although Defendants never use the term, they appear to rely on the fiduciary shield doctrine to argue that jurisdiction is not proper over Ron and Eric Hensley. Defendants assert that "neither Ron Hensley nor Eric Hensley individually used the allegedly infringing mark in California or elsewhere". (*See generally,* Defs.' Mot. at 5.) This assertion is made despite the sale of gift cards sold into California by Defendant Deux Ron, Inc. bearing the infringing mark which is the subject of this Complaint.

Ron and Eric's intimation that they are protected by some corporate veil is irrelevant. Piercing the corporate veil is relevant only to contract causes of action. The present trademark infringement action arises under Tort law where there is no protective corporate veil. The individual causing a tort to occur is liable in a way that is not affected by the existence of corporations or other legal entities.

In Tort actions the long accepted principles of *Respondeat Superior* would hold Ron and Eric liable for the claimed infringement committed by an employee of their company, Deux Ron, Inc., if the employee committed the tort in the scope of his employment and in performing service on behalf of the principals, Ron and Eric. *See Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal. App.4th 953, 969 (internal citations omitted). It does not matter whether the tort was authorized or ratified by the principals. *Id.* at 969.

The fiduciary shield doctrine prevents a court from exercising personal jurisdiction over an officer, director, agent, or employee of a corporation based

solely on the person's affiliation with the corporation. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520-21 (9th Cir. 1989). But even assuming that the doctrine is viable and applicable, courts will disregard the corporate form for jurisdictional purposes where the officer is a "primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities", *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (internal quotation marks omitted), or the corporation is the alter ego of the individual defendant. *Wolf Designs, Inc. v. DHR Company*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004)

Here, at a minimum, Ron and Eric were the primary participants and directed the wrongdoing alleged in the Complaint. (*See generally,* Ron Decl.; *see also* Eric Decl.) Deux Ron, Inc. is a family-run business with Patriarch Ron Hensley and Son Eric Hensley serving as President and Vice President, respectively. (*See* Ron Decl. ¶¶ 1, 3; Eric Decl. ¶¶ 1, 3) Deux Ron, Inc., actually bears Ron's given name. Ron and Eric are also the only two individuals providing declarations containing intimate details of Deux Ron, Inc.'s business.

In their Declarations Ron and Eric provide details pertaining to Deux Ron, Inc.'s business operations and activities; ownership and use of the relevant mark; relevant goods/services and markets for those goods/services under the relevant mark; trade channels for the relevant goods/services; advertising and marketing decisions regarding the mark at issue; and enforcement efforts. (*See* Ron Decl. ¶¶ 1, 5; Eric Decl. ¶¶ 1, 5) They also acknowledge that their business has fulfilled at least one online order to a customer having a California address. (Ron Decl. ¶¶ 9; Eric Decl. ¶¶ 11) Their intimate knowledge of Deux Ron, Inc.'s affairs supports the belief that they are the only persons that could have controlled and directed the actions which allowed this infringing activity to occur.

As the Complaint alleges, Defendants operate a website which infringes upon Plaintiff's trademark rights. (Compl. ¶¶ 6, 9) Defendants also sell gift cards called

"Arcadia cards" online ("Arcadia cards") which also infringe upon Plaintiff's trademark rights. (Compl. ¶ 4) Ron and Eric's involvement in these activities and their respective roles as President and Vice President supports a presumption that they control all the activities of the organization. (*See* Ron Decl. ¶ 1; Eric Decl. ¶ 1)

It is believed that Ron and Eric as President, Vice President, and controlling officers play an active role in conducting not just the business affairs of Deux Ron, Inc., but also its litigation matters such as by volunteering declarations and to competently testify with personal and first-hand knowledge. *Id.* As such, personal jurisdiction over all defendants is proper for the reasons discussed below.

## II.  THIS COURT HAS SPECIFIC JURISDICTION OVER DEFENDANTS

Absent an evidentiary hearing, plaintiffs need only make a *prima facie* showing of jurisdictional facts to withstand a motion to dismiss for lack of personal jurisdiction. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012). Plaintiff's allegations must be taken as true, unless directly controverted, and conflicts between facts in the parties' affidavits must be resolved in Plaintiff's favor for purposes of *prima facie* jurisdictional analysis. *Dole Food Co., Inc., v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Because California's long-arm statute permits a District Court to exercise personal jurisdiction over a nonresident on any basis that will not violate due process, the traditional two-step analysis collapses into a single question of whether exercising personal jurisdiction comports with Federal Due Process requirements. Cal. Civ. Code § 410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Federal Due Process provides for two types of personal jurisdiction—general and specific jurisdiction. Defendants are subject to specific jurisdiction in this case.

The Ninth Circuit analyzes specific jurisdiction using a three-part test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he

> purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). While Plaintiff must establish the first two prongs, Defendants bear the burden of presenting "'a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### A. **Defendants Purposefully Directed Activity into California and Purposefully Availed Themselves of the Laws of California.**

In trademark claims, the Ninth Circuit courts consider whether a defendant (1) "purposefully availed" itself of the privilege of conducting activities in the forum, or (2) "purposefully directed" activities toward the forum. *Schwarzenegger*, 374 F.3d at 802. Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir.2006) Evidence of direction generally consists of action taking place outside the forum that is directed at the forum (suggesting evidence of purposeful direction includes activities such as distribution and advertising). *Id*. The court has specific jurisdiction over Defendants under both purposeful availment and direction.

#### 1. *Defendants Have Purposefully Availed Themselves of California's Benefits and Protections*

The Ninth Circuit courts use a sliding-scale approach to assess purposeful availment through use of the internet. *American Auto Ass'n, Inc. v. Darba Enterprises, Inc.* (N.D. Cal. 2009), 2009 WL 1066506 at *4. As that case explained,

> At one end of the scale are 'passive' websites which merely display information, such as an advertisement. Personal jurisdiction is not appropriate when a website is merely

ERVIN COHEN & JESSUP LLP

> passive. At the other end of the scale are "interactive" websites which function for commercial purposes and where users exchange information. Personal jurisdiction is appropriate when an entity is conducting business over the internet. Where a website is somewhere between the two extremes, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.

*Id.* (citations omitted). Purposeful availment exists where the defendant engaged in affirmative conduct furthering a business transaction within the forum state and is based on the notion that a person doing business in a state should reasonably anticipate being haled into court in that state. *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1119 (C.D. Cal. 2009). Courts also find purposeful availment when a defendant deliberately has created continuing obligations between himself and residents of the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).

Defendants maintain an interactive website and make no attempt to dispute this fact. Defendants admit to operating the website www.gatlinburgarcade.com ("website") through which they have serviced "4,607 online orders for goods and services made through Deux Ron's website during the past ten years." (Defs.' Mot. at 2, 9; Ron Decl. ¶ 9; Eric Decl. ¶ 11.) Defendants readily acknowledge fulfilling at least one online order to a customer in California. (Defs.' Mot. at 2, 9; Ron Decl. ¶ 9; Eric Decl. ¶ 11.)

Defendants also maintained a record of these online sales. (Defs.' Mot. at 9; Ron Decl. ¶ 9; Eric Decl. ¶11.) The records include customer information such as email address, full name, phone number, billing address, and shipping address as evidenced by a purchase made on July 30, 2018 by California resident Aaron Croft ("Mr. Croft"). (*See* Croft Decl. ¶ 12 and Exhibit 13.) Defendants require this information before a transaction may be completed. (Croft Decl. ¶¶ 5, 12, and Exhibits 12 – 17.) This information is collected from the customer within the forum

ERVIN COHEN & JESSUP LLP

state through the Defendants' website which serves as a portal for accessing customers throughout the state. (Croft Decl. ¶¶ 5, 12, and Exhibits 12 – 17.) There can be no doubt, however, that the main purpose of Defendants' website is for commercial gain, not just targeted advertisement.

Defendants' website sells a variety of goods including gift card and gift card packages. One such gift card is sold under the infringing term ARCADIA Play Cards ("Arcadia card") and is redeemable only at their Gatlinburg Arcade. (Ron Decl. ¶¶ 8; Eric Decl. ¶¶ 10.) Defendants acknowledge having sold at least one Arcadia card to a California resident out of a total 4,607 online orders. (Defs.' Mot. at 2, 9; Ron Decl. ¶ 9; Eric Decl. ¶ 11.) By selling an allegedly branded product in the state of California the Defendants are availing themselves of the common law trademark protections afforded by California.

Furthermore, the Arcadia gift card, by its very nature, creates a continuing obligation between Defendants and any purchaser of that card including the California card holder. It is axiomatic that a gift card is valid until redeemed and places a continuing obligation on the purveyor of the card. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (finding purposeful availment when a defendant has deliberately created continuing obligations between himself and residents of the forum). There could be little doubt in the mind of the Defendants when they sold a purportedly branded gift card to a California resident and became deliberately obligated to that customer that there was a reasonable possibility of being haled into a California court.

Defendants argue that they did not personally avail themselves because the transaction was conducted online, they had no physical presence in California, and the customer was allegedly required to pick the gift card up in Tennessee. However, the Defendants deliberately accepted payment for the gift card in California where the transaction took place. Additionally, the affirmative conduct of selling a gift card creates an obligation to the customer wherever they may be whether or not they

have physical possession of the card. *See Cybersell, Inc. v. Cybersell, Inc.* 130 F.3d 414 (9th Cir. 1997):

> We recently explained in Ballard that the "purposeful availment" requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents. 'It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts 'are purposefully directed' toward forum residents.' quoting from Ballard, 65 F.3d at 1498 (citations omitted).

Defendants emphasize they did not avail themselves because the customer was allegedly required to pick the gift card up in Tennessee. (Defs.' Mot. at 9, 10; Ron Decl. ¶ 9; Eric Decl. ¶ 11.) A party cannot avoid jurisdiction simply by not shipping what was ordered by a paying customer of another state. Furthermore, as discussed, it is reasonable for a customer to expect that the gift card was to be shipped to their "shipping address" since that very information is required from the user during the ordering process. (Croft Decl. ¶¶ 5, 12, and Exhibits 12 – 17.)

On July 30 Mr. Croft, a resident of Los Angeles, California, purchased Arcadia cards. (Croft Decl. ¶ 3.) To complete the transaction Mr. Croft was required to provide personal information including his email address, full name, phone number, billing address, and shipping address. (Croft Decl. ¶¶ 5, 12, and Exhibits 12 – 17.) Mr. Croft was also required to select a shipping method. (Croft Decl. ¶¶ 5, 12, and Exhibit 14.) Despite having specifically asked for shipping information and requiring this information in order that a sale be completed, Defendants sent a receipt by email indicating that the "Items will NOT be shipped". (Croft Decl. ¶ 15 and Exhibit 23.) Whether the Defendants had committed themselves to shipping into California remains an open question that the court must resolve in favor of plaintiff. *See Pebble Beach Co.*, 453 F.3d at 1157 (9th Cir. 2006) ("However, this demonstration requires that the plaintiff 'make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss.' *Doe v. Unocal,* 248 F.3d 915, 922 (9th Cir.2001) (internal citations omitted). Moreover, for the

purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff, here, Pebble Beach. *Id*.")

Despite Defendants' insistence that their refusal to ship the gift cards absolves them from jurisdiction, it is irrelevant that the cards will not be shipped to California since the transactions occurred in California and Defendants are under a continuing obligation to said California resident. *See e.g. j2 Cloud Services, Inc. v. Fax87* (C.D. Cal. 2017) 2017 WL 1535083 at *6 (fact that physical products were not delivered to forum state did not preclude exercise of jurisdiction).

Furthermore, the sale of gift cards to California residents is affirmative conduct that amounts to an availment to the protections afforded by California's laws regarding the sale and redemption of gift cards. *See* Cal. Civ. Code § 1749.45 – 1749.6. These laws provide protection to distributors and beneficiaries alike by providing clarity as to the types of gift card transactions that are permissible. One protection is the prohibition against gift card expiration dates, however, the gift card Defendants sold to Mr. Croft was conditioned on an expiration of 365 days from purchase. Defendants cannot avail themselves of the protections of Cal. Civ. Code § 1749.45 – 1749.6, violate these codes, and expect to then avoid personal jurisdiction merely by failing to physically deliver the card to the customer (which may also be a violation of the Code).

### 2. *Defendants Have Purposefully Directed Activities Towards California*

Because Defendants maintained an "interactive website" – as opposed to a "passive website" – many of Defendants' acts discussed above also satisfy the "purposeful direction" test.

As described by the Supreme Court in *Calder*, a defendant purposefully directs his activities towards a forum if he "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,

ERVIN COHEN & JESSUP LLP

874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)).

Defendants' intentional acts include, *inter alia*, registering a website bearing an infringing use of Plaintiff's ARCADIA mark and selling Arcadia cards also bearing that mark through its interactive website. Defendants also solicited information from customers and encouraged them to share the Defendants' website bearing the infringing mark on social media. (Croft Decl. ¶¶ 4 – 6, 12, and Exhibits 10 – 13.) Further Defendants applied for a federal US trademark application for the mark ARCADIA in conjunction with infringing services. (Compl. ¶ 22.)

As stated, Defendants operate an interactive website. However, for the sake of argument, even if their website were considered passive, Defendants' acts amount to "something more" such as "express aiming as contemplated by the court in *Pebble Beach*.

In determining whether a nonresident defendant has done something more, the Ninth Circuit has considered several factors, including the extent of interactivity of the defendant's website, the geographic scope of defendant's commercial ambition, and whether the defendant individually targeted a plaintiff known to be a forum resident. *Inventors Row Inc. v. Blankenship* (E.D. Cal. 2018) 2018 WL 2064795 at * 4. District courts in this circuit have generally found that online product sales to residents of the forum are sufficient to satisfy the "something more" requirement in trademark infringement cases. *Id*.

In addition to the deliberate act of selling an Arcadia card to Mr. Croft, at the completion of Defendants' transaction, *supra*, Mr. Croft was asked whether he preferred to receive newsletters or special offers. (Croft Decl. ¶¶ 5, 12, and Exhibits 12 – 17.) He was also encouraged to share his order on social media which he did on Google+. (Croft Decl. ¶¶ 6, 13, and Exhibits 12 – 17.) Defendants' website also allowed Mr. Croft to create a profile to be added to a database for express targeting and encouraged him to share their infringing website with his contacts throughout

California. After creating a profile, Mr. Croft received an email stating "For your convenience, we've created you an account on Gatlinburg Space Needle Store so you can check the status of your order and checkout quicker in the future." (Croft Decl. ¶¶ 4, 14, and Exhibit 22.) This was done with full knowledge of Plaintiff's trademark rights and business operations within California. There can be no doubt that Defendants' actions amount to more than just a "foreseeable effect". Defendants' actions are affirmative acts of purposeful direction.

Defendants should have known that their actions were likely to cause harm in California. Defendants had constructive notice of Plaintiff's federal trademark rights. This constructive notice included that the Plaintiff and owner of record, WebMagic Ventures, LLC, operated in California. Defendants could easily foresee that operating an interactive website and selling gift cards into the state of California, both of which infringe upon Plaintiff's trademark rights, would be likely to cause harm in California. Further, Defendants should have known that selling gift cards within California which violate California Civil Code would cause the very harm that the Code was meant to prevent. In any case, in view of the filing of the Opposition Defendants are now charged with having actual notice that their actions are likely to cause harm in California yet they are still selling Arcadia cards in California.

Also noteworthy are Defendants' nationwide commercial ambitions. Despite Defendants' assertion that "Deux Ron's business, located in the mountains of eastern Tennessee, is decidedly local", (s*ee,* Defs.' Mot. at 1, 10.), the website encouraged Mr. Croft to create a profile to be added to a database for express targeting and encouraged him to share their infringing website with his contacts throughout California. Furthermore, Defendants applied for a federal trademark for nationwide protection under the infringing term ARCADIA. A "decidedly local" business does not need nationwide protection. Their broader commercial ambitions became more clear when they alleged that "Defendants' activities are focused in Tennessee and the

Southeast, not California". (Defs.' Mot. at 1, 10.) The internal inconsistencies in their geographic scope should cast some doubt on their allegations about staying out of California. Defendants' federal trademark application and sales in California eliminate any doubt that their commercial ambitions are anything but national. Further, the business activities providing for jurisdiction throughout the Southeast are presumably the same business activities that provide for jurisdiction in California.

As discussed, Defendants' directed sales through its website, sold and accepted payment for gift cards in California, and incurred commercial obligations arising under these gift cards. It is irrelevant that the cards will not be shipped to California since the transactions occurred in California and Defendants are currently under a continuing obligation to at least one California resident, Mr. Croft. *See j2 Cloud Services, Inc. v. Fax87*.

Furthermore, to the extent Defendants argue that there were only minimal Yelp reviews/sales in California, the court in *PetEdge, Inc. v. Fortress Secure Sols., LLC* (D. Mass. 2015) F. Sup. 3d 249, 257 held that the sale of just two products into Massachusetts was sufficient to confer jurisdiction in a patent infringement case. Additionally, at least one California case, *Greenbroz, Inc. v. Laeger Built, LLC* (S.D. Cal. 2017) 2017 WL 1427139, has considered that case in *dicta*. Since the product offered for sale, the Arcadia card, is directly infringing Plaintiff's trademark rights, the situations are analogous.

**B.** **Plaintiff's Cause of Action Arises Out of Defendants' Operation of its Infringing Interactive Website and Sales.**

A plaintiff's cause of action arises out of a defendant's contacts where there is a "direct nexus" between the asserted cause of action and the defendant's activities in the forum state. *Allstar Marketing Group, LLC,* 666 F. Supp. 2d at 1123. The Ninth Circuit uses a "but for" test to determine whether the plaintiff's cause of action arose out of the defendant's conduct. *Id*.

Here, Defendants' contacts with the state of California are the "but for" cause of Plaintiff's cause of action. Defendants sold gift cards bearing an infringing mark into California and operated an infringing interactive website that solicited information from customers in California. This information was used to maintain contact in order to allow California customers the ability to "checkout quicker in the future". (Croft Decl. ¶¶ 4, 14, and Exhibit 22.). Defendants' website also encourages and facilitates posting confirmation of such infringing transactions on social media. (Croft Decl. ¶¶ 6, 13, and Exhibits 18 – 21.) "But for" Defendants' infringing sales and operation of its infringing interactive website, Plaintiff would not have a cause of action for trademark infringement.

Defendants have failed to meet their burden of presenting a compelling case that the exercise of jurisdiction would not be reasonable.

## III. IF THE COURT FINDS INSUFFICIENT INFORMATION TO ESTABLISH JURISDICTION, IT SHOULD PERMIT JURISDICTIONAL DISCOVERY

If the Court finds that the facts set forth above are not sufficient to support a finding of specific jurisdiction, the Court should permit Plaintiff to conduct limited jurisdictional discovery in order to support its claim. "'[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed.'" *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (quoting *Am. West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 801 (9th Cir. 1989)). To obtain jurisdictional discovery, Plaintiff need only establish a "colorable basis" for claiming jurisdiction—a lower standard than a *prima facie* showing. *Mitan v. Freeney,* 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007); see also *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (finding that a court abused its discretion by not permitting jurisdictional discovery into whether there were additional facts demonstrating that the alter ego or agency tests were met).

To the extent the Court determines that Plaintiff has not made a *prima facie* showing of personal jurisdiction, Plaintiff should be permitted to conduct limited jurisdictional discovery regarding at least the following issues:

- Defendants' contacts with California, such as visits to the state and business transactions it conducts or has conducted with its residents;
- The number of "hits" received by Deux Ron, Inc.'s web page from residents in California;
- The corporate structure of Deux Ron, Inc. and Ron and Eric's role within the company;
- The extent to which other members of the Hensley family participate in the business of Deux Ron, Inc., their identities, and their duties;
- The extent to which Ron and Eric control and direct the activities of Deux Ron, Inc.;
- The extent to which Ron and Eric controlled and directed the actions of Deux Ron, Inc. that Plaintiff contends infringed its trademark rights;
- The extent to which Deux Ron, Inc. is a separate and distinct entity and identity from Ron and Eric as individuals;
- The extent to which Ron and Eric commingles funds with Deux Ron, Inc.; and
- The assertions made by Ron and Eric in their Declarations submitted in support of this Motion.

## IV. VENUE IN THIS FORUM IS PROPER

Under the general venue statute, a civil action may be brought in (1) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (2) an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. As stated above, Defendants are subject to this Court's personal jurisdiction.

Conspicuous by its absence is any assertion by Defendants as to why the Eastern District of Tennessee would at all be an appropriate venue for this action. Defendants merely try to analogize this case to an Arizona District Court holding where the court allegedly found venue improper because the defendant had not sold products or generated business in Arizona from its website. (*See* Defs.' Mot. at 12.) Here, unlike the facts in the Arizona case, as alleged by Defendants, Defendants affirmatively sold gift cards in California, collected payment in California, and generated business in California from its website.

Defendants maintain an interactive website bearing an infringing mark. This website is accessible in L.A. County, California. In addition to the one California sale that Defendants acknowledge, Defendants sold an Arcadia card bearing an infringing mark to Mr. Croft, a resident of L.A. County, California. (Mot at 2, 9; Ron Decl. 9; Eric Decl. 11.) Mr. Croft purchased the card and Defendants deliberately accepted payment from Mr. Croft in L.A. County, California. Defendants are obligated to honor the value of the Arcadia gift card to Mr. Croft under the laws of his home state regardless of whether Defendants ship the card or not. As such, this Court is the most appropriate venue for deciding this complaint and Defendants failed to provide any reason whatsoever for transferring this case to the Eastern District of Tennessee.

Defendants have failed to provide a claim or any evidence of an undue burden that would be caused by the current venue. Conspicuous by its absence, the motion for change of venue should be dismissed out of hand.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

Defendants are subject to Specific Jurisdiction in California for their infringing acts.   Venue is proper for similar reasons.  Therefore, the court should dismiss the Defendants' Motion.

Respectfully submitted,

DATED:  August 6, 2018            ERVIN COHEN & JESSUP LLP
                                  Russell M. Selmont

                            By:   */s/ Russell M. Selmont*
                                  Russell M. Selmont
                                  Attorneys for Plaintiff WEBMAGIC VENTURES, LLC

# CERTIFICATE OF SERVICE

## CENTRAL DISTRICT OF CALIFORNIA

*WebMagic Ventures LLC v. Deux Ron, Inc., et al.*

*Case No.: 2:18-cv-PA-AS*

The undersigned certifies that on August 6, 2018, the following documents and all related attachments ("Documents") were filed with the Court using the CM/ECF system.

**PLAINTIFF WEBMAGIC VENTURES, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(B)(2), 12(B)(3), OR IN THE ALTERNATIVE, TO TRANSFER VENUE UNDER 28 U.S.C. §§ 1404, 1406, 1631**

Pursuant to L.R. 5-3.2, all parties to the above case and/or each attorneys of record herein who are registered users are being served with a copy of these Documents via the Court's CM/ECF system. Any other parties and/or attorneys of record who are not registered users from the following list are being served by first class mail.

By:   /s/ Russell M. Selmont
Russell M. Selmont

14038.16:9315580.1

16

Case No. 2:18-cv-5933-PA-AS

PLAINTIFF WEBMAGIC VENTURES, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(B)(2), 12(B)(3), OR IN THE ALTERNATIVE, TO TRANSFER VENUE